John Wayne Phillips was charged with robbery wherein a person was intentionally killed (a capital offense) in Madison County. Upon a trial, he was convicted, adjudicated guilty, and sentenced to life without parole. This appeal follows.
During the early morning hours of February 12, 1981, the owner or part-owner of a night club in Huntsville, The Bridge Club, and a waitress who worked there, were killed during a robbery of the club. The present charge involves killing of the owner.
David Lynn Tibbetts, the State's primary witness, who admitted being the triggerman in the incident, testified under an agreement that the State would recommend as punishment two consecutive life sentences upon his pleas of guilty to the two murder charges.
Tibbetts and appellant had become acquainted in Oklahoma City in 1980. They had shared apartments and had traveled together quite a bit. According to the testimony of Tibbetts, he and appellant went to Huntsville from Oklahoma City in early February, 1981, for the purpose of obtaining and selling drugs. He testified that they burglarized several stores and veterinary clinics in order to steal money and drugs.
Tibbetts testified that on the evening of February 11, 1981, he went to a night club in Huntsville, at appellant's direction, to "check it out" for the purpose of burglarizing it later. Being unable to distinguish the type of burglar alarm system the night club had, he "became frightened by the situation and shied away from it." Tibbetts went to The Bridge Club, located directly across the street from the motel at which they were staying, "to check it out." Tibbetts went to The Bridge Club around midnight of the evening of February 11th, staying for about an hour until it closed. He called appellant from the night club after the closing hour and in response to appellant's questions, he told appellant that there was "probably a couple of thousand dollars" in the cash register and that four people, all employees, were in the club. According to Tibbetts, appellant then inquired whether Tibbetts could "rob the place." Tibbetts left the club as two of the employees, a dancer and a waiter, left. Tibbetts testified that he walked across the street to the motel and informed appellant, who was sitting in their car, that he could not "rob the place." According to Tibbetts, appellant stated that "the heat was on and we needed to get out of town."
Tibbetts stated that appellant asked him if he could get back in the place and Tibbetts told him that he could gain entry by using the excuse that he wanted to get his address book which he inadvertently left lying by the telephone. Tibbetts related that appellant encouraged him to go back to the club for the purpose of robbing it, and gave him the admonition "to leave no witnesses."
Tibbetts testified that he went back to the club, gaining entrance as he had planned. While he was in the process of the robbery, Tibbetts shot the owner of the club, McArthur Freeman. Mr. Freeman fired at Tibbetts, hitting him in the hand and shoulder. Tibbetts also shot and killed an employee of the club, Jackie Hobbs.
Tibbetts searched both victims for cash, getting about "$70 or $75" from Freeman and about "$35 or $40" from Hobbs. He then removed about $200 from the cash register, took Freeman's gun, and went back to the motel. He gave the money to appellant.
Appellant and Tibbetts left Huntsville shortly after these events and returned to Oklahoma City. Tibbetts testified that he and appellant burglarized several veterinary clinics to get drugs and money. Within a few days, they left Oklahoma City in the company of two females en route to Arizona or California. In the vicinity of Shamrock, Texas, the car in which they were riding developed water pump trouble, and they stopped at a service station, seeking assistance. Some disagreement ensued between appellant and the service station operator which culminated in appellant's *Page 1331 
flashing the pistol which had been taken off McArthur Freeman in Huntsville. They left the service station and a short time thereafter were stopped by the Texas Highway Patrol, who were looking for the car driven by appellant, in response to a disturbance call involving "a man with a gun."
The officers ordered the four occupants out of the car and placed them face down in the ditch. The occupants were searched for weapons, but none was found. The Shamrock, Texas, police chief arrived on the scene as the search of the occupants was being conducted. He walked over to their car and "pulled out a weapon from the front portion of the vehicle." Appellant was then arrested for "unlawfully carrying a weapon."
A computer check of the weapon's make, serial number and model revealed that it was the same weapon taken from the body of McArthur Freeman at the time of the robbery and double murder in Huntsville.
Tibbetts gave police officers a number of conflicting statements concerning his bullet wounds and the events leading up to the appellant's arrest.
 I
In the hearing on his motion for a new trial, appellant adduced evidence that during the course of the trial one of the jurors discussed some facet or facets of the case with a non-juror. The juror admitted that taking part in the discussion was contrary to the trial judge's explicit instructions. There was some conflict in the evidence as to the contents of the discussion, and whether it took place before or after the conclusion of the trial. The uncontradicted evidence showed that the non-juror who contacted the juror was a friend of appellant and that the initial contact, and possibly the second one, were made at the request of appellant. Appellant argues that such juror misconduct warrants the granting of a new trial and that the trial court erred to reversal in its failure to grant such a motion. We are not so persuaded. Under the law, on the motion for new trial the trial court was charged with the duty and responsibility of determining, as a matter of fact, whether or not the alleged communications between the juror and the non-juror caused prejudice to the appellant. Cox v. State, 394 So.2d 103 (Ala.Cr.App. 1981);Woods v. State, 367 So.2d 974 (Ala.Cr.App. 1978); Bascom v.State, 344 So.2d 218 (Ala.Cr.App. 1977). The trial court resolved that issue against the appellant by denying the motion for new trial, and we are not convinced that the court's discretion was abused in so doing. Additionally, the appellant certainly cannot be allowed to benefit by his own misconduct. The evidence clearly shows that he contacted the non-juror, his friend, several times prior to and during the trial, asking him to contact the juror in question. The friend did as he was asked, and now appellant seeks a reversal by activity which he himself set into motion. To allow such would be absurd.
 II
Next the appellant contends that the trial court erred to reversal in allowing evidence of additional earlier criminal offenses committed by appellant and his codefendant, to be introduced during the course of this trial. Generally, the law does not allow evidence of other acts which constitute independent and separate crimes to be introduced in the prosecution of an individual for a particular crime. There are a number of well-recognized exceptions to this rule, however.Hayes v. State, 384 So.2d 623 (Ala.Cr.App.), cert. denied,384 So.2d 627 (Ala. 1980), aff'd, 395 So.2d 127 (Ala.Cr.App.),cert. denied, 395 So.2d 150 (Ala. 1981); C. Gamble, McElroyAlabama Evidence, § 69.01 (1) (3rd ed. 1977). One of those exceptions allows the introduction of evidence of other offenses which constitute part of the res gestae of the offense being tried, Poke v. State, 387 So.2d 310 (Ala.Cr.App. 1980);Hopkins v. State, 49 Ala. App. 159, 269 So.2d 175 (1972). Another allows the introduction of evidence of other criminal offenses when this evidence, considered along with evidence of the offense being *Page 1332 
tried, justifies a finding that all of the offenses were committed as part of a plan, design, scheme or system. Hardy v.State, 51 Ala. App. 489, 286 So.2d 899 (1973); Whitehead v.State, 16 Ala. App. 427, 78 So. 467 (1918).
From the outset, the State's theory of this case was that the robbery and intentional killing of McArthur Freeman were parts of a much larger picture of criminal activity which began when appellant and Tibbetts left Oklahoma City, headed for Huntsville, and which was finished when they were arrested near Shamrock, Texas. Most of the evidence of other offenses about which appellant complains tended to establish this theory that the instant offense and those other offenses were all parts of a plan, scheme, or design. The evidence showed that the two left Oklahoma City in early February, 1981, traveling to Huntsville with the specific purpose and plan in mind to obtain and sell drugs and to commit burglaries and robberies for monetary gain. The evidence of other offenses which appellant contends was admitted in error simply proves that the plan and purpose of appellant and Tibbetts in going to Huntsville was carried out. Other evidence of offenses not included in the indictment were clearly part of the res gestae of the offense being tried, such as the evidence of possession and furnishing of illegal drugs and the evidence of possession of a stolen shotgun on the night in question. These possessory acts cannot be separated logically from the total story of what happened on the evening of February 11, and the early morning hours of February 12, 1981, at The Bridge Club in Huntsville.
 III
The appellant next insists that he was tried under a statute, § 13A-5-31 (a)(2), Code of Alabama 1975, which had been repealed prior to his trial. The indictment against him was returned by the Grand Jury of Madison County on May 29, 1981, for acts committed on February 12, 1981. On both of those dates, this statute was the law in Alabama pertaining to the offense charged. Admittedly, the legislature did repeal Code of Alabama 1975, Sections 13A-5-30 through 13A-5-38; however, this repeal did not take effect until July 1, 1981, and it specifically provided that it did not affect "the application of pre-existing law to conduct occurring before the effective date of this act." 1981 Ala. Acts, No. 81-178, §§ 20, 24 at pages 214-215. Appellant also contends that the trial court erred in charging the jury on the lesser included offenses of murder and felony murder since the 1975 death penalty statute contained a clause precluding the charging of any lesser included offenses. Even if this were error, it would be harmless error since the jury found the appellant guilty of the offense charged and not a lesser included offense; however, it has now been held that the charging of lesser included offenses supported by the evidence under the 1975 capital penalty statute is required. Beck v. State, 396 So.2d 645 (Ala. 1981).
 IV
Finally, the appellant contends that the pistol removed from the automobile which he was driving when stopped by the state trooper in Texas was seized in violation of his constitutional rights and was erroneously admitted into evidence during the trial. The officer who stopped and arrested appellant had received a complaint that a person meeting the appellant's description had caused a disturbance where a gun was involved at a service station sometime shortly prior to the time of appellant's stop. The report also included a description of an automobile which the person causing the disturbance was supposed to be driving. Certainly this trooper had a duty to stop appellant's car since appellant and the car being driven by him met the appropriate descriptions. In addition the trooper had a duty to make a limited protective search for concealed weapons in order to protect himself and others since it had been reported that appellant was armed. To do anything less than what this *Page 1333 
officer did in this instance would have been a neglect of official duty.
We feel that the search and seizure conducted by the trooper and the chief of police of Shamrock, Texas, were reasonable and justified under the circumstances. It was not made for the purpose of discovering evidence of a crime but rather it was made so that the officers could proceed with their investigation without fear of danger. Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Adams v. Williams,407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); DeLoach v.State, 356 So.2d 222 (Ala.Cr.App. 1977), cert. denied,356 So.2d 230 (1978).
The judgment of the circuit court is hereby affirmed.
The foregoing opinion was prepared by Hon. JERRY M. WHITE, Circuit Judge, temporarily on duty on the court pursuant to §12-2-30 (b)(6), Code of Alabama 1975; the court has adopted his opinion as its own.
AFFIRMED.
All the Judges concur.