52 A.3d 111

**Alexander CRIPPEN**

v.

**STATE of Maryland.**

**No. 531, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Sept. 4, 2012.

---

Steven S. Hamilton (Byron L. Warnken, Warnken, LLC, on the brief) Towson, MD, for appellant.

Edward J. Kelley (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: WOODWARD, WRIGHT, and HOTTEN, JJ.

WRIGHT, J.

On December 10, 2010, following a two-day bench trial, Alexander Crippen, appellant, was convicted in the Circuit Court for Worcester County of a number of offenses arising from a May 26, 2010 shooting which took place at 503 Laurel Street, Pocomoke City, Maryland. On December 20, 2010, Crippen filed a Motion for a New Trial, pursuant to Maryland Rule 4–331,[1] which did not contain any grounds for the motion, but included a request that the court hold the motion *sub curia* until a written brief could be filed. On March 15, 2011, Crippen filed a memorandum in support of his Motion for a New Trial, wherein he asserted the following grounds in support of the motion:

(1) newly discovered evidence, in the form of an affidavit of Daryl Wise, which contradicted Tamar Cutler's trial testimony that Cutler had observed Crippen firing a chrome handgun;

(2) the evidence was insufficient to convict Crippen;

(3) the potential gun used in the shooting had been found;

(4) the State incorrectly identified a potential witness; and

(5) the charges were unlawful.

---

1. Maryland Rule 4–331 provides in pertinent part:
 (a) **Within ten days of verdict.** On motion of the defendant filed within ten days after a verdict, the court, in the interest of justice, may order a new trial.
 (b) **Revisory Power.** The court has revisory power and control over the judgment to set aside an unjust or improper verdict and grant a new trial:
 (1) in the District Court, on motion filed within 90 days after its imposition of sentence if an appeal has not been perfected;
 (2) in the circuit courts, on motion filed within 90 days after its imposition of sentence.
 Thereafter, the court has revisory power and control over the judgment in case of fraud, mistake, or irregularity.
 (c) **Newly discovered evidence.** The court may grant a new trial or other appropriate relief on the ground of newly discovered evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule:
 (1) on motion filed within one year after the date the court imposed sentence or the date it received a mandate issued by the Court of Appeals or the Court of Special Appeals, whichever is later[.]

On April 8, 2011, Crippen was sentenced. He noted this appeal on April 13, 2011.

Shortly thereafter, Crippen retained new counsel, and, on June 6, 2011, Crippen filed an Amended Motion for a New Trial. In his amended motion, Crippen raised an ineffective assistance of counsel argument for the first time. On August 5, 2011, the circuit court held a hearing on Crippen's motion. At the hearing, the court requested that Crippen clarify which provision of Maryland Rule 4–331 he was relying on for making his ineffective assistance of counsel argument. On August 17, 2011, Crippen filed a supplemental memorandum in which he argued that his claim of ineffective assistance of counsel constituted newly discovered evidence for the purposes of Rule 4–331(c).

On September 20, 2011, the circuit court denied Crippen's motion. Although in his brief Crippen states "this appeal follows," Crippen did not file a notice of appeal following the court's September 20, 2011 decision.

## Question Presented

Crippen, in an effort to fuse the trial record with the Motion for a New Trial record, presents the following question for our review:

Was [Crippen] denied effective assistance of counsel where defense counsel affirmatively introduced and subsequently failed to object to otherwise inadmissible hearsay statements of the victim and the State thereafter used those out-of-court statements to corroborate the victim's testimony, which was essential to proving the State's theory of the case?

The State has filed a motion to dismiss arguing that Crippen's appeal of the September 20, 2011 denial of the Motion for a New Trial is not properly before this Court because Crippen did not file a notice of appeal following the trial court's decision to deny his motion. We agree with the State and shall dismiss Crippen's appeal pursuant to Maryland Rule 8–602(a)(3) [2] to the extent that he is appealing the court's

─────

2. That section states:

ruling of September 20, 2011, because Crippen did not file a timely notice of appeal from the denial of his Amended Motion for a New Trial, as required by Maryland Rule 8–202.[3] In addition, we will not reach Crippen's claim of ineffective assistance of counsel, as the trial record is insufficient to permit this Court to review the claim on direct appeal. Accordingly, we affirm his conviction.

## Facts

On June 14, 2010, Crippen was indicted on charges of first-degree murder; attempted first-degree murder; attempted second-degree murder; first-degree assault; second-degree assault; use of a handgun in the commission of a felony or crime of violence; wearing, carrying, and transporting a handgun; and reckless endangerment. The indictment arose from Crippen's alleged involvement in the murder of Reginald Handy, Jr., and the attempted murder of Torrance Davis during the May 26, 2010 shooting at 503 Laurel Street. According to the indictment, Crippen used a handgun during the attack; however, prior to trial, the State received a ballistics report which indicated that Handy was killed by a .223 caliber rifle bullet fired by a second shooter. Therefore, on December 1, 2010, the State *nol prossed* the first-degree murder charge against Crippen.

---

(a) **Grounds.** On motion or on its own initiative, the Court may dismiss an appeal for any of the following reasons:

* * *

(3) the notice of appeal was not filed with the lower court within the time prescribed by Rule 8–202.

**3.** Maryland Rule 8–202 provides in pertinent part:

(a) **Generally.** Except as otherwise provided in this Rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken. In this Rule, "judgment" includes a verdict or decision of a circuit court to which issues have been sent from an Orphans' Court.

(b) **Criminal action—Motion for a new trial.** In a criminal action, when a timely motion for a new trial is filed pursuant to Maryland Rule 4–331(a), the notice of appeal shall be filed within 30 days after the later of (1) entry of the judgment or (2) entry of a notice withdrawing the motion or an order denying the motion.

## I. Trial Proceedings

On December 6, 2010, Crippen waived his right to a jury trial, electing instead to be tried by the court. The court conducted a two-day bench trial ending on December 7, 2010. In its order denying Crippen's Amended Motion for a New Trial, the court summarized the evidence presented at trial as follows:

The evidence [at trial] revealed that at 9:59 P.M. on May 26, 2010 a bullet was fired striking Reginald Handy, Jr. in the back and killing him. Mr. Handy was one of a group of mostly young men gathered in the side and front yards of 503 Laurel Street in Pocomoke City. A street camera mounted on Laurel Street captured some of the events on Laurel Street and in the area of 503 Laurel [Street] before, during and shortly after the time Handy was shot. The camera video was received into evidence. It showed that within seconds after the shot killing Reginald Handy was fired, a man firing a handgun moved across the front of 503 Laurel Street near the front sidewalk, then ran into the street and out of the camera's view. The shell casings recovered at the scene established that the man was firing a .380 handgun. The video did not reveal at whom the gunman was firing as the target of his shots was not within camera view.

The police, at first, believed that Handy was shot and killed by a .380 caliber bullet, presumably fired by the man depicted on the video. Shortly before trial, the investigation revealed that Handy was killed by a .223 caliber rifle bullet. That bullet is believed to have been fired from a .223 caliber rifle found the day after the shooting, hidden in the yard of a house near 503 Laurel Street. The court determined beyond a reasonable doubt that Alexander Crippen was the gunman firing the .380 caliber handgun.

Twelve witnesses testified for the State. Six were police officers involved in various aspects of the investigation. One police officer, Det. Sgt. Lupiwok, related the contents of his interview with Crippen. Four witnesses were persons at or near the scene at the time of the shooting. Three of

those were in the front or side yard of 503 Laurel Street. The fourth "on-scene witness" was across the street and some distance down from 503 Laurel Street. Two of the on-scene witnesses (Torrance Davis and Tamar Cutler) identified Crippen as the man firing the handgun. Torrance Davis said that Crippen was shooting at him. Tamar Cutler said that, while he was standing on the front porch or stoop of his house, he saw Crippen firing a chrome colored handgun. He placed Crippen's location while firing the handgun as in the front of 503 Laurel Street. Two other on-scene witnesses (Kavron Rowley and Lorenzo Davis) identified Crippen as having been in the area of 503 Laurel Street at the time of the shooting and described some of the events which transpired. They were not in a position to see who fired the shots. Two other witnesses (Kimberly DeShields and Vera Byrd) testified to an event occurring only hours before the shooting. Kimberly DeShields said she saw Crippen brandish a silver-colored handgun while threatening Vera Byrd. Ms. Byrd corroborated the testimony of Ms. DeShields, but said she did not actually see the gun in Crippen's hand. She testified that when she heard Ms. DeShields exclaim "Oh, he's got a gun" (referring to Crippen), she was too frightened to move and did not look at Crippen.

In addition to identifying Crippen as one of the shooters, Davis testified that he had been involved in a few altercations with Crippen during the prior summer, and that, about a week before the shooting, he had been in another altercation with Crippen. Davis further testified that, following the shooting, he went to the Peninsula Regional Medical Center where Handy, his cousin, was taken. Davis stated that, while at the hospital, he spoke with Sergeant Scott Brent, a Maryland State Police Officer.

On cross-examination, Crippen's attorney asked Davis about statements he had made to the police regarding his recollection of the shooting. A recording of the statements which were made at the hospital by Davis to Sgt. Brent was also played during cross-examination. In that statement, Davis

identified Crippen as the shooter and asserted that Crippen had shot at him. After playing Davis's statement for the court, Crippen's attorney introduced the recording into evidence.

Later in the trial, the State called Sgt. Brent to testify about the conversation that he had at the hospital with Davis. Sgt. Brent testified that Davis appeared to be very upset, and that Davis said he would cooperate if he could see Handy's body. Sgt. Brent further testified that after Davis was permitted to see Handy's body, Davis provided a statement about the incident. Sgt. Brent recorded that statement. On cross-examination, Crippen's attorney asked Sgt. Brent about his interaction with Davis on the night of the shooting. During the exchange between Crippen's attorney and Sgt. Brent, the following colloquy occurred:

[Crippen's attorney]: Okay. When you arrived at the hospital do you remember what time that was?

[Sgt. Brent]: The time I arrived?

[Crippen's attorney]: Yeah.

[Sgt. Brent]: I got the call at 22:10 hours which is 10:10 p.m. I was there—I walked in the room at 22:39. The time I walked in was the time they declared Reginald Handy deceased.

[Crippen's attorney]: What time was that?

[Sgt. Brent]: 22:39 [10:39 p.m.].

[Crippen's attorney]: Okay. And how soon after did you see Mr. Davis?

[Sgt. Brent]: I would say approximately 15 to 20 minutes, approximately.

[Crippen's attorney]: Now, did you take his recorded statement immediately, or did you interview him about the events first?

[Sgt. Brent]: When he came back with me, as soon as— after he leaned over the body, I said, "You said you would cooperate with me." He said, "That's right." He looked directly at me with tears in his eyes and says, "Alex

Crippen, I saw him pull the gun out. I saw him shoot him. I saw him even try to shoot me, too."

[Crippen's attorney]: And in fact [Davis] says that he saw [Crippen] shoot his cousin in the back, correct?

[Sgt. Brent]: He says, exact words, "I saw him pull the gun out. I saw him point it. I saw him shoot it." He said, "He even tried to shoot at me, too."

Crippen's attorney did not object to the above testimony.

During his closing argument, Crippen's attorney asserted that Davis was not a credible witness, relying on Davis's statement which he had made at the hospital to support this claim. Crippen's attorney played the statement several times for the court and discussed the portions of the statement which he believed to be lies. In the State's closing argument, the prosecution also relied on Davis's statement which he had made at the hospital to corroborate his testimony that Crippen had shot at him.

In rendering its verdict, the court summarized the evidence before it and acknowledged that Davis had some credibility issues. However, the court found Davis's testimony to. be credible as to the ultimate issue of whether Crippen had shot at him. Specifically, the court stated:

Parts of Torrance Davis' testimony and Tamar Cutler's testimony the Court finds more troubling. Torrance Davis clearly embellished his testimony with a falsehood when he claimed that the gun he saw Crippen shooting was a .380. Davis clearly was untruthful when he denied firing the .45 caliber pistol about one minute after Handy was shot.

The physical evidence recovered and the testimony of Shanna Harmon indicate that about one minute after Handy was shot and after the .380 shooter had already fled, someone, and that someone was almost certainly Torrance Davis, began wildly shooting a .45 caliber handgun from near the location of Reginald Handy's body.

Some other things impact Davis' credibility also. For example, his conviction for making a false statement to a

police officer, his invocation of the Fifth Amendment when questioned about a shooting.

The essence of Davis' testimony, however, was entirely credible to the Court. Indeed the part of this testimony— his testimony that dealt with Crippen firing a handgun at 503 Laurel [Street] at about 9:59 [p.m.] on May the 26th, 2010, was consistent with what he told Sergeant Brent only ... one hour after his cousin was shot to death and at a time when, according to all the witnesses who testified on that subject or gave information, he was extremely upset.

At that time he, like the police, was unaware that Handy had been killed with a bullet from a .223 which was fired at essentially the same time as the second gunman opened fire with the .380.

As Sergeant Brent said when questioned by the defense, quote "He looked directly at me" ... referring to Davis talking—"He looked directly at me with tears in his eyes and says, 'Alexander Crippen. I saw him pull the gun out. I saw him shooting. I saw him even try to shoot me,'" end quote. That statement and the part of Torrance Davis' testimony that was consistent with his statement to Sergeant Brent, as well as his testimony about his location, was entirely truthful.

Based on the entirety of the evidence presented at trial, the court determined beyond a reasonable doubt that Crippen was the person who shot at Torrance Davis at 503 Laurel Street on May 26, 2010.

## II. Post-trial Motions

On December 10, 2010, the court rendered its verdict and convicted Crippen on all counts. On December 20, 2010, Crippen's attorney filed the initial Motion for a New Trial pursuant to Md. Rule 4–331. On April 8, 2011, Crippen was sentenced. On April 13, 2011, Crippen noted this appeal. On June 6, 2011, after hiring a new attorney, Crippen filed an Amended Motion for a New Trial, in which he claimed that he should be granted a new trial because:

(1) his trial counsel was ineffective;

(2) he had newly discovered evidence in the form of Daryl Wise's previously mentioned affidavit;

(3) the State failed to disclose prior to trial a threatening statement that Crippen made to Davis; and

(4) the State failed to timely reveal that it intended to call Lorenzo Davis as a witness.

On August 5, 2011, the circuit court held a hearing on Crippen's motion, at which time Crippen's trial counsel and Daryl Wise testified. During the trial, Crippen's trial counsel testified regarding his cross-examination of Sgt. Brent. Counsel admitted that he should have objected to and moved to strike Sgt. Brent's testimony, regarding the contents of Davis's hospital statement, because Sgt. Brent's answer was unresponsive to the question Crippen's trial counsel had asked. Daryl Wise testified as to what he observed on the night of the shooting and with whom he spoke following the incident.

At the start of the hearing, the trial judge asked Crippen's new attorney to clarify which subsection of Maryland Rule 4–331 he was relying on to support his claim of ineffective assistance of counsel. In response, Crippen's attorney stated:

Yes and although it is—although it is arguable that at the time we first prepared that, we thought we were, (a) as extended by *Campbell* [*v. State*, 373 Md. 637, 821 A.2d 1 (2003),[4]] but I certainly agree with Your Honor, in the alternative, please read our pleadings broadly such as to put us within one of the other sections. And I agree that we're probably good under two sections [ (b) and (c) ].

On September 20, 2011, the court issued an order denying Crippen's Motion for a New Trial. The court ruled that, in

---

4. A Motion for a New Trial filed in due time may not be amended or supplemented after the filing period. In the absence of a rule or statute allowing such supplement to a timely filed Motion for a New Trial, there exists no right to supplement a motion and the trial court, therefore, does not have authority to consider the amendment. *Campbell*, 373 Md. at 658–61, 821 A.2d 1.

exercising its discretion, it would consider the motion under subsections (b) and (c). However, it concluded that none of the grounds that Crippen raised in his motion met the requirements for a new trial under either subsections (b) or (c). As to Crippen's claim of ineffective assistance of counsel, the court determined that the claim did not constitute "newly discovered evidence" as required by Md. Rule 4–331(c). Crippen did not file a timely notice of appeal regarding the court's decision to deny his Amended Motion for a New Trial.

## Discussion

On appeal, Crippen argues that he is entitled to a new trial because he received ineffective assistance from his trial counsel. Specifically, Crippen asserts that his trial counsel erred by introducing Davis's hospital statement into evidence. Crippen also asserts that his trial counsel erred when he played that statement during his closing argument. Furthermore, Crippen contends that his trial counsel erred by failing to object to Sgt. Brent's testimony regarding Davis's hospital statement because Sgt. Brent's answer was unresponsive to the question posed by Crippen's attorney.

The State responds that Crippen's appeal should be dismissed for two reasons. First, because Crippen failed to file a notice of appeal within 30 days of the court's ruling on his Motion for a New Trial as required by Maryland Rules 8–201(a)[5] and 8–202(a).[6] Second, because he failed to include any argument in his brief attacking his conviction and sentence as required by Maryland Rules 8–502, 8–503, and 8–504.[7]

---

5. Maryland Rule 8–201(a) states in pertinent part:
 (a) **By notice of appeal.** Except as provided in Rule 8–204, the only method of securing review by the Court of Special Appeals is by the filing of a notice of appeal within the time prescribed in Rule 8–202.

6. Maryland Rule 8–202(a) states in pertinent part:
 (a) **Generally.** Except as otherwise provided in this Rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken.

7. Maryland Rules 8–502, 8–503, and 8–504 pertain to when briefs must be filed, the appropriate format for a brief, and the contents of a brief.

In the alternative, the State argues that, should this Court reach the merits of Crippen's claim, Crippen's ineffectiveness of counsel argument was not raised before the circuit court, and, therefore, was not preserved for appeal pursuant to Maryland Rule 8–131(a).[8] The State further contends that the circuit court did not abuse its discretion in ruling that Crippen was not entitled to a new trial under Maryland Rule 4–331(c) because his claim for ineffective assistance of counsel did not constitute newly discovered evidence as required by subsection (c) of the rule. The court noted that, even if it did constitute newly discovered evidence, Crippen would not have been prejudiced by his attorney's ineffectiveness.

■ We agree with the State that Crippen failed to file a timely notice of appeal following the circuit court's denial of his Motion for a New Trial. Therefore, to the extent that Crippen's appeal challenges the circuit court's ruling on his motion, we shall dismiss the appeal pursuant to Maryland Rule 8–602(a)(3) because the appeal was not filed within 30 days of the order denying the motion. Moreover, to the extent that Crippen's appeal challenges his conviction, we conclude that the record lacks a sufficient factual basis to permit a review of Crippen's claim of ineffective assistance of counsel on direct appeal. Therefore, we affirm the conviction.

The Court of Appeals has repeatedly held that when a notice of appeal is filed *before* a final judgment is issued, the appeal is of no force and effect and cannot confer jurisdiction to an appellate court to review the circuit court's decision.

---

When a party fails to meet these requirements, the appeal may be dismissed pursuant to Maryland Rule 8–602(a)(7)–(8).

8. Maryland Rule 8–131(a) states:
 (a) **Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

*See Blucher v. Ekstrom,* 309 Md. 458, 463, 524 A.2d 1235 (1987) ("Under a long line of this Court's decisions, when an order of appeal is filed *before* the appealable judgment, the order of appeal is of no force and effect. There must still be an order filed *after* the appealable judgment to confer appellate jurisdiction.") (Emphasis in original) (citations omitted); *Houghton v. County Comm'rs of Kent County,* 305 Md. 407, 413, 504 A.2d 1145 (1986) ("The requirement of [Rule 8–202], that an order of appeal be filed within thirty days of a final judgment, is jurisdictional; if the requirement is not met, the appellate court acquires no jurisdiction and the appeal must be dismissed.") (Citations omitted). Thus, the notice of appeal filed on April 13, 2011, does not authorize this Court to review the circuit court's order denying Crippen's Amended Motion for New Trial.[9] As Crippen failed to file an *amended* notice of appeal *after* the circuit court denied his motion, there is no jurisdictional basis for this Court to review the circuit court's September 20, 2011 decision. Therefore, we must dismiss Crippen's appeal to the extent that it challenges the circuit court's order denying his belated Amended Motion for a New Trial.[10]

---

**9.** The appeal was filed nearly two months before Crippen filed his Amended Motion for a New Trial and more than five months before the circuit court ruled on Crippen's motion.

**10.** Had Crippen filed a notice of appeal *following* the court's denial of his Motion for a New Trial, Crippen's claim challenging the court's ruling would be subject to the more stringent "abuse of discretion standard," *see Buck v. Cam's Broadloom Rugs, Inc.,* 328 Md. 51, 56–57, 612 A.2d 1294 (1992) (citation omitted); *Jackson v. State,* 164 Md.App. 679, 700, 884 A.2d 694 (2005), rather than the *de novo* standard, *Schisler v. State,* 394 Md. 519, 535, 907 A.2d 175 (2006), which we apply when reviewing claims of legal error.

To establish a violation of the constitutional right to the effective assistance of counsel, "a defendant must prove both that his or her attorney's [performance] was deficient and that he or she was prejudiced as a result of that deficiency." *Duvall v. State,* 399 Md. 210, 222, 923 A.2d 81 (2007) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Thus, for Crippen to succeed on an appeal from the denial of his Amended Motion for a New Trial, he would first have to prove that the circuit court abused its discretion in concluding that the performance of his counsel was not newly

As to Crippen's challenge to his conviction of December 10, 2010, such a challenge would more properly be raised in a post-conviction proceeding.

It is well settled that "[t]he right to counsel includes the right to the effective assistance of counsel." *Tetso v. State,* 205 Md.App. 334, 377, 45 A.3d 788 (2012) (citing *Denisyuk v. State,* 422 Md. 462, 465–66, 30 A.3d 914 (2011)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* (quoting *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

 Generally, in Maryland, a defendant's attack of a criminal conviction due to ineffective assistance of counsel occurs at post-conviction review. *Id.* This is because a post-conviction hearing presents "the opportunity for further fact-finding. . . ." *Id.* at 377, 45 A.3d 788. The Court of Appeals has consistently held that "the 'desirable procedure' for presenting claims of ineffective assistance of counsel is through post-conviction proceedings." *Id.* at 377–78, 45 A.3d 788 (quoting *Johnson v. State,* 292 Md. 405, 434, 439 A.2d 542 (1982)) (internal citation and quotations omitted). Further, the Court of Appeals has explained the reasoning for preferring post-conviction over direct appeal for ineffective assistance of counsel claims as follows:

> In essence, it is because the trial record does not ordinarily illuminate the basis for the challenged acts or omissions of counsel, that a claim of ineffective assistance is more appropriately made in a post conviction proceeding[.] Moreover, under the settled rules of appellate procedure, a claim of ineffective assistance of counsel not presented to the trial court generally is not an issue which will be reviewed initially on direct appeal, although competency of counsel may be raised for the first time at a[ ] post conviction

---

discovered evidence. Then, and only then, could we address whether his trial counsel's performance was ineffective.

proceeding. Upon such a collateral attack, there is present-
ed an opportunity for taking testimony, receiving evidence,
and making factual findings concerning the allegations of
counsel's incompetence. By having counsel testify and de-
scribe his or her reasons for acting or failing to act in the
manner complained of, the post conviction court is better
able to determine intelligently whether the attorney's ac-
tions met the applicable standard of competence.

*Id.* (quoting *Johnson, supra,* 292 Md. at 434, 439 A.2d 542)
(alterations in original).

We have explained the extremely rare situations where
ineffective assistance of counsel claims will be evaluated on
direct appeal as follows:

The rare instances in which we have permitted direct review
are instructive, because they indicate our willingness to
entertain such claims on direct review only when the facts in
the trial record sufficiently illuminate the basis for the claim
of ineffectiveness of counsel. As we explained in *In re
Parris W.* [363 Md. 717, 727, 770 A.2d 202], direct review is
an exception that applies only when "the critical facts are
not in dispute and the record is sufficiently developed to
permit a fair evaluation of the claim."

*Id.* at 378, 45 A.3d 788 (quoting *Mosley v. State,* 378 Md. 548,
566, 836 A.2d 678 (2003)).

▉ Relying on the Court of Appeals's decision in *In re
Parris W.,* 363 Md. 717, 770 A.2d 202 (2001), and our decision
in *Ruth v. State,* 133 Md.App. 358, 757 A.2d 152 (2000),
Crippen argues that addressing his ineffective assistance of
counsel claim on direct appeal is appropriate in this case.
Crippen argues that the testimony taken during the hearing
on his Amended Motion for a New Trial established a suffi-
cient record for this Court to review the performance of his
trial counsel. Crippen requests that we combine the evidence
received at the motions hearing and the evidence received at
trial and to consider the two separate proceedings as one. We
conclude that neither of the decisions cited by Crippen support
addressing his claim on direct appeal in this manner. In both

of those cases, the basis for the defendant's allegation of ineffective assistance of counsel was plain on the trial record. Here, by contrast, Crippen's claim requires an examination of his attorney's actions. The actions were not in any way explained until Crippen's motions hearing. The motions hearing is not part of the trial record in this appeal. Therefore, we cannot examine his attorney's actions in light of the record available for our review.

In *In re Parris W.*, the Court of Appeals stated that the ordinary rule that ineffective assistance of counsel claims must be raised in post conviction proceedings "is not absolute and, where the critical facts are not in dispute and the record is sufficiently developed to permit a fair evaluation of the claim, there is no need for a collateral fact-finding proceeding, and review on direct appeal may be appropriate and desirable." 363 Md. at 726, 770 A.2d 202 (citations omitted). There, Parris W. was charged as a juvenile with assault and trespassing. *Id.* at 720, 770 A.2d 202. At Parris W.'s adjudicatory hearing, his attorney requested a continuance on the grounds that he had issued subpoenas to Parris W.'s alibi witnesses that contained the *wrong date*. *Id.* (Emphasis added). The court denied Parris W.'s request, and, as a result, Parris W.'s attorney was unable to produce the witnesses on the day of the hearing to corroborate Parris W.'s testimony regarding his alibi. *Id.* at 721–22, 770 A.2d 202. Therefore, Parris W.'s counsel's error was readily apparent from the record.

In *Ruth*, the defendant argued that he received ineffective assistance from his trial counsel because his attorney also represented the co-defendant in that trial. *Ruth v. State*, 133 Md.App. at 366–67, 757 A.2d 152. The defendant argued that his attorney's representation of both him and his co-defendant constituted an inherent conflict of interest which was prejudicial to the defendant. *Id.* We stated that there, "[b]ecause we are presented with a full record, we shall entertain the question posed." *Id.* at 367, 757 A.2d 152. Although we acknowledge that the circuit court heard testimony regarding the defendant's ineffective assistance of counsel claim during the hearing on his Motion for a New Trial, that testimony was not

necessary to establish the factual basis for the defendant's claim of ineffective assistance of counsel. *Id.* In *Ruth*, there was no need for further fact finding to determine whether defendant's trial counsel represented both defendants, nor was there any need to determine trial counsel's reason for representing both defendants because, if a conflict existed, the representation was inappropriate regardless of trial counsel's reasoning. Thus, as in *In re Parris W.*, the trial counsel's error in *Ruth* was plain on the record before the trial court.

The Court of Appeals addressed a similar set of facts in *Duvall v. State*, 399 Md. 210, 923 A.2d 81 (2007). In *Duvall*, the defendant was represented by an attorney from the Montgomery County Office of the Public Defender. *Id.* at 215, 923 A.2d 81. The defendant denied the charges against him and claimed that another individual, represented by the same office on unrelated charges, was in fact responsible for the crimes with which Duvall had been charged. *Id.* at 213, 923 A.2d 81. Upon learning of the conflict, Duvall's attorney filed a motion for a continuance. *Id.* at 216, 923 A.2d 81. Despite the apparent conflict of interest, the administrative judge denied defense counsel's request for a continuance. *Id.* Upon review, the Court held that, because there existed a conflict of interest and because defense counsel requested a continuance prior to trial, the administrative judge erred, as a matter of law, in failing to grant the postponement to give defense counsel reasonable time to resolve the conflict. *Id.* at 213–14, 923 A.2d 81.

In explaining that a claim for ineffective assistance of counsel ordinarily should be addressed in a post-conviction proceeding, *see Ware v. State*, 360 Md. 650, 706, 759 A.2d 764 (2000); *Perry v. State*, 344 Md. 204, 227, 686 A.2d 274 (1996); *Walker v. State*, 338 Md. 253, 262, 658 A.2d 239 (1995), the Court in *Duvall* stated:

[t]he main justification for the rule is that, generally, the trial record does not provide adequate detail upon which the reviewing court could base an assessment regarding whether counsel rendered ineffective assistance because the character of counsel's representation is not the focus of the

proceedings and there is no discussion of counsel's strategy supporting the conduct in issue.

*Id.* at 239, 923 A.2d 81 (quoting *Smith v. State,* 394 Md. 184, 200, 905 A.2d 315 (2006)).

The Court further stated that review of an ineffective assistance of counsel claim on post-conviction is unnecessary where the record is clear and the necessary facts are contained in the record. *Id.* at 240, 923 A.2d 81. There, the Court held that the record was clear and, thus, there was no need for a post-conviction hearing. Clearly, the trial court's actions caused the adverse effect on the defendant's representation. *Id.* at 240–41, 923 A.2d 81.

Here, we are obligated to separate the trial record from the record developed at the Motion for a New Trial hearing and review only the trial record. Unlike in *In re Parris W., Ruth,* and *Duvall,* the basis for Crippen's claim is not apparent on the record at trial, and therefore, additional fact-finding is necessary to evaluate Crippen's claim. During trial, Crippen's trial attorney did not admit to any error nor did Crippen raise the issue of ineffective assistance at trial. In fact, Crippen did not raise his ineffective assistance of counsel claim until June 6, 2011, when he filed his Amended Motion for a New Trial.

As discussed above, this Court does not have jurisdiction to review the circuit court's order denying Crippen's Amended Motion for a New Trial as Crippen did not appeal that decision. Despite our lack of jurisdiction to review the circuit court's order, Crippen asks that we still consider the testimony presented, to the circuit court during its review of his Amended Motion for a New Trial, in deciding whether a sufficient factual basis exists to permit review of Crippen's claim of ineffective assistance of counsel on direct appeal. We cannot do so.[11] The only judgment before this Court is

---

11. There was very little attempt to make a "full record" at the hearing on Crippen's Motion for a New Trial. The hearing testimony provided little concerning the relevant factual issues and the full basis for trial counsel's actions. Defense counsel was only questioned as to one brief

Crippen's conviction for the crimes arising from the shooting on May 26, 2010. Thus, the only facts that we can consider in reviewing the circuit court's judgment are those facts which were before the circuit court when it entered the judgment from which this appeal lies. As the trial record does not contain sufficient facts to substantiate Crippen's claim of ineffective assistance of counsel, we affirm his conviction. Crippen may proceed with a post-conviction proceeding to address his ineffective assistance of counsel claim.

**APPEAL OF THE SEPTEMBER 20, 2011 ORDER DISMISSED. JUDGMENTS OF THE CIRCUIT COURT FOR WORCESTER COUNTY ON ALL CONVICTIONS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

part of his examination of Davis, and the State did not cross-examine the witness to emphasize the obvious conflict in his testimony.